Mr. Chief Justice Johnson delivered the opinion of the Court. Numerous points are raised and assigned for error, which we will examine in the order in which they arise upon the record. The first relates to the ruling of the Circuit Court in respect to the entertaining of the application for a change of venue without a previous notice to the defendant below. The exception taken was not to the decision of the Court in granting the change of venue, but simply to the entertaining the motion and refusal to proceed forthwith to the trial of the cause. If any error intervened in respect to that matter, it was necessarily in awarding a change of venue and not in entertaining the motion without previous notice of the intended application. The mere act of entertaining the motion without granting it could not possibly affect the rights of the defendant, and consequently could afford no cause of complaint. The next question presented relates to the propriety of the action of the Court in permitting Leech to substitute himself in the place of William Robinson, deceased, and to proceed to trial and judgment without having first notified Noland of the intended substitution. The 7th sec. ch. 1, Dig., declares that “when there is but one plaintiff in an action, and he shall die before final judgment, such action shall not thereby abate, if the cause of action survive to the heirs, devisees, executor or administrator of such plaintiff, but such of them as might prosecute the same cause of action may continue such suit by an order of the Court substituting them as plaintiff therein.” The death of Robinson, the original plaintiff, could not have the effect to abate the suit, and, as a necessary consequence, the defendant could not claim to be released from his obligation to be in Court or to take the consequences of his default. It appears, from the recital in the record, that Leech availed himself of the earliest opportunity that presented itself to come in and substitute himself as a party in the place of the original plaintiff. He came in at the first term after the death of the original plaintiff, and the defendant, being in Court, was bound, at his peril, to take notice of the proceeding, and, as he is not shown to have opposed it, the presumption is that he had no good ground upon which to rest a resistance to it. This doctrine we consider fully borne out and sustained by the 16th section of the chapter referred to. By it, provision is made that, “ when any person is made co-plaintiff, or co-defendant, or is substituted as plaintiff, or defendant, in the place of the original party, in any of these cases, for which provision is made in this act, such new party shall, on his application, be entitled to a continuance of the suit until the next term of the Court; but nothing in this section contained shall be so construed as to give the opposite party a right to a continuance of the suit on account of such substitution.” We think it clear, from the whole statute, that the substitution having been made at the first term after the death of the original plaintiff, there can be no doubt but the defendant was bound to take notice of it, and that having then failed to make any resistance, he is forever precluded from so doing. The Supreme Court of the United States, in the case of Wilson vs. Codman's ex., by Marshall, C.J., said: “ It is contended, on the part of the defendant, that, on the suggestion of the death of either plaintiff or defendant, a scire facias ought to issue in order to bring in his representative: or if a scire facias shall not be required, yet that the opposite party should have the same time to plead and make a proper defence as if such process had been actually sued. The words of the ” act of Congress do not seem to countenance this opinion. They contemplate the coming in of the executor as a voluntary act, and give the scire jadas to bring him in, if it shall be necessary, and to enable'the Court “to render such judgment against the estate of the deceased party ” “ as if the executor or administrator had voluntarily made himself a party to the suit.” From the language of the act, this may be done instanter. The opinion that it is to be done on motion, and that the party may immediately proceed to trial, derives strength from the provision that the executor or administrator so becoming a party may have one continuance. This provision shows that the legislature supposed the circumstance of making the executor a party to the suit to be no cause of delay. But, as the executor might require time to inform himself of the proper evidence, one continuance was allowed him for that purpose. The same reason not extending to the other party, the same indulgence is not extended to him. There is, then, nothing in the act, nor is there any thing in the nature of the provision, which should induce an opinion that any delay is to be occasioned where the executor makes himself a party and is ready to go to trial. Unquestionably he must show himself to be executor unless the fact be admitted by the parties; and the defendant may insist on the production of hisletters testamentary before he shall be permitted to prosecute; but if the order for his admission as a party be made, it is too late to contest the fact of his being an executor.” The act of Congress referred to in the opinion is substantially the same as our statute, and the argument of the Court in that case is conclusive of the question raised in this. It is also objected, against the revivor, that the executor is not the proper party, but the heirs should have been substituted in the place of the originaljjplaintiff. In support of this position, we are referred to the case of Dixon vs. Thatcher’s heirs, (3 Eng. 137.) That case cannot govern the decision in this, as the legislature have since passed an act expressly placing slaves in the hands of the executor or administrator as assets, and emphatically declaring that they shall be deemed in their possession and under their control in like manner as personal estate. (See sec. 62, ch. 4, Digest.) This statute was in force at the time of the institution of this suit, and also at the time of substitution of the present plaintiff, and consequently the executor was the proper party. The next and last ground taken is, that the jury failed to find the separate value of each slave mentioned in the declaration. This objection is doubtless well taken. The 39th sec. ch. 136, Digest, declares that “ If the goods and chattels specified in the declaration shall not have been replevied and delivered to the plaintiff, such plaintiff, in case he shall recover judgment upon the whole record, shall be entitled, in addition to his judgment for damages and costs, to a further judgment that such goods and chattels be replevied and delivered to him without delay, or, in default thereof, that such plaintiff recover from the defendant the value of such goods and chattels, as the same shall have been assessed by the jury on the trial or upon the writ of inquiry.” The judgment is in the alternative precisely as it is in detinue, and consequently the same rule is applicable to each. Judge Tucker, in his Commentaries, when discoursing upon the action of detinue, said: “ The verdict of the jury should find as to all the articles of property claimed in the declaration; and formerly, when this was not done, a venire de novo was awarded. (1 Wash. 76.) But now the plaintiff is barred as to the things omitted. (1 R. C. ch. 128, sec. 105.) But, where several articles are demanded, the verdict may find for the plaintiff as to some, and for the defendant as to others. The jury must also ascertain the price or value of the property demanded: but if this be omitted, the Court may direct a writ of inquiry to ascertain it. (1 R. C. ch. 128, sec. 105.) This value ought not to be assessed of several articles. Separate values should be found, or there must be a writ of inquiry to ascertain them, (2 Call 313. 2 Mun. 539.) But the jury may find general or joint damages for detaining several slaves. (2 Mun. 539.) The diversity arises from the consideration that the judgment is so entered that' if any article of the property cannot be had in specie, the plaintiff will be entitled to the alternative value. The value of each article should, of course, be ascertained, since the plaintiff may be able to get one part of the property in specie though he cannot get the other. As to the damages, no such reason exists.” In a note to this subject, it is said “that 1 R. S. ch. 128, sec. 105, provides the writ of inquiry whenever the price or value is omitted. But that a venire de novo would seem to be the regular course according to ordinary principles when the values of several things are improperly joined.” It will be- perceived, from this authority, that, in the State of Virginia, the statute expressly provides for the issuance of a writ of inquiry where the price or value is omitted in the finding upon the issues. No such authority is given by our replevin statute, and, as a necessary consequence, this case must be governed by ordinary principles. The defect complained of, therefore, can be cured only by a ve-nire de novo. The cause will, therefore, for this error, be reversed, and remanded to the Circuit Court of Lawrence county, to be proceeded in according to law and not inconsistent with this opinion.